UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | CRIMINAL NO. 05-278-02 (CKK) |
| : | |
| RICO LEE THOMAS, : | |
| MICHAEL LEN JACKSON, : | |
| : | |
| Defendants. : | |
| _____ : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT MICHAEL L.
JACKSON'S MOTION TO SUPPRESS PHYSICAL EVIDENCE**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes the defendant's motion to suppress physical evidence. As grounds for this opposition, the United States relies on the following points and authorities as such other points and authorities as may be cited at a motions hearing.

**I.   FACTUAL BACKGROUND**

Defendant Jackson is currently charged with Unlawful Possession of a Firearm by a Person Convicted of Crime Punishable by Imprisonment for a Term Exceeding One Year. These charges arose out of the defendant's joint and constructive possession of a .357 Smith and Wesson and a Tec-9 handgun on June 29, 2005.

On Wednesday, June 29, 2005, at approximately 12:10 p.m., Metropolitan Poice Department Officers Gregory Phifer and Howard Lamumba were sitting in a marked MPD police cruiser in the xxxx block of xxxxxxx Avenue, x.x. in the District of Columbia, preparing an accident report for an accident that had just occurred. As they sat at the accident scene, the officers heard the sound of screeching tires speeding towards the police cruiser and the other vehicles that had previously

collided during the accident. The police officers looked up and observed a 1990 White 2-door Mercury Cougar, approaching them at a high rate of speed. Upon observing the police cruiser and the other cars at the accident scene, the White Mercury Cougar started swerving back and forth and soon careened out of control, while trying to navigate around the accident scene. The White Mercury Cougar then crashed and jumped onto the sidewalk, nearly hitting several pedestrians who were walking on the sidewalk. The White Mercury Cougar, which was driven by defendant Rico Thomas, with defendant Michael L. Jackson in the front passenger seat, came to a complete stop just a few feet away from the marked police car. Officers Phifer and Lamumba ( both in full uniform) then approached the White Mercury Cougar and requested defendant Thomas's license and registration. Defendant Thomas handed Officer Phifer his driver's permit, then jumped over his car, and bolted. Simultaneously, defendant Jackson who exited the White Mercury from the front passenger seat, took off running too. Defendant Jackson did not get very far and was apprehended within seconds. Defendant Thomas was apprehended within one block. After both defendants were caught, they were brought back to the area of the White Mercury Cougar. The officers peered into the White Mercury Cougar and observed a .357 caliber Smith & Wesson handgun resting in plain view on the center console, between the two seats, where the two defendants had been sitting. The handgun had been at arms length of both defendants. Consequently, both men were placed under arrest. Moments later, a civilian directed another officer, who had arrived on the scene, to a discarded bag that contained a Tec-9 semi-automatic handgun that was believed to have been thrown out of the White Mercury Cougar when the vehicle began to swerve out of control.

II.  ARGUMENT

Defendant Jackson now moves to suppress the physical evidence, claiming that it was obtained in violation of his Fourth and Fifth Amendments to the United States Constitution. In light of the foregoing facts, it is clear that the defendant's motion is facially deficient. Specifically, the defendant failed to allege facts in his motion which, if proven at a hearing, would demonstrate that his Fourth and Fifth Amendment rights were violated by the seizure of the gun in plain view from the vehicle in which he was a passenger, after he and the driver had fled from the scene of an accident. Consequently, the defendant's motion to suppress evidence should be summarily denied. See Rawlings v. Kentucky, 448 U.S. 98 (1980).

### A. Defendant Jackson has no standing to contest the seizure of .357 Smith & Wesson or the Tec-9 handgun

A defendant claiming the protection of the Fourth Amendment bears the burden of showing that "his own rights were violated by the challenged search or seizure." Rakas v. Illinois, 439 U.S. 128, 131 n.1 (1978); accord Rawlings v. Kentucky, 448 U.S. 98, 104-05 (1980). In Rakas, the Supreme Court held that "passengers in a car had no legitimate expectation of privacy in the glove compartment or under the seat of a car in which they were merely passengers and asserted neither a property nor a possessory interest in the car or the property seized." Id. at 148-149. See also Mitchell v. United States, 609 A.2d 1099, 1107 (D.C. 1992)(quoting Rakas). As a passenger in defendant Thomas's vehicle, defendant Jackson lacks standing to challenge the "search" of the interior compartment of that vehicle.

Similarly, as it relates to the Tec-9 handgun that was found in a discarded bag, defendant Jackson cannot assert a Fourth Amendment challenge when he has abandoned the property in

question, even if he retains some proprietary interest in the property itself. See Abel v. United States, 362 U.S. 217, 241 (1960); United States v. Wider, 951 F.2d 1283, 185 (D.C. Cir. 1991). "It is well established that the warrantless search or seizure of property that has been abandoned does not violate the Fourth Amendment." Wider, 951 F.2d at 1285 (citing Abel, 362 U.S. at 241). See also Parman v. United States, 399 F.2d 559, 564-65 (D.C. Cir.) ("a valid finding of abandonment deprives Appellant of standing to assert a claim that the items in question were improperly 'seized'"), cert. denied, 393 U.S. 858 (1968). Such an outcome makes eminent sense because "[w]hen individuals voluntarily abandon property, they forfeit any legitimate expectation of privacy in it that they might have had." United States v. Thomas, 864 F.2d 843, 845 (D.C. Cir. 1989). "Although the abandonment inquiry focuses on the intent of the person alleged to have abandoned the property, the test of abandonment is an objective one under which 'intent may be inferred from words spoken, acts done, and other objective facts.'" Wider, 951 F.2d at 1285 (citing Thomas, 864 F.2d at 846). In making this assessment, the Court may consider the facts and circumstances known to the officers at the time they were alerted to the bag containing the Tec-9 handgun in addition to any subsequently discovered events which may support an inference that the defendant had abandoned the property. See, e.g., United States v. Levasseur, 816 F.2d 37, 44 (2d Cir. 1987), cert. denied, 113 S. Ct. 1368 (1993) (citing Parman, 399 F.2d at 565)).

    Here, defendant had apparently discarded the bag containing the Tec-9 handgun in an attempt to distance himself from those items. After he crashed into the sidewalk, attempted to flee from the police and was stopped, he never claimed ownership of the property. Accordingly, defendant abandoned the items and has no standing to contest their seizure.

### B.   The Officers Had Probable Cause to Make a Traffic Stop

Notwithstanding defendant Jackson's facially deficient motion and lack of standing, the recovery of the handgun and ammunition from inside defendant Thomas's vehicle did not violate defendant Jackson's Fourth and Fifth Amendments. In the instant case, the totality of the circumstances amounted to probable cause to stop and to arrest both defendants. Whether the police have probable cause for an arrest or search is determined by viewing the totality of the circumstances from the perspective of a prudent officer. United States v. Catlett, 97 F.3d 565, 573 (D.C. Cir. 1996); United States v. Tavolacci, 895 F.2d 1423, 1428-29 (D.C. Cir. 1990). Probable cause is established when the officer possesses information sufficient to warrant a prudent person in believing that the suspect has committed or is committing a crime. Catlett, 97 F.3d at 573. As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Whren v. United States, 517 U.S. 806 (1996). "The Fourth Amendment does not bar the police from stopping and questioning motorists when they witness or suspect a violation of traffic laws, even if the offense is a minor one." United States v. Mitchell, 951 F.2d 1291, 1295 (D.C. Cir. 1991), cert. denied, 112 S. Ct. 1976 (1992); Delaware v. Prouse, 440 U.S. 648, 659 (1979) ("The foremost method of enforcing traffic and vehicle safety regulations . . . is acting upon observed violations. Vehicle stops for traffic violations occur countless times each day; and on those occasions licenses and registration papers are subject to inspection . . ."); United States v. Montgomery, 561 F.2d 875, 879 (D.C. Cir. 1977) ("The police may stop and question the driver of a vehicle when an infraction of the motor vehicle code is seen or suspected."). Moreover, "once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's

proscription of unreasonable searches and seizures." Pennsylvania v. Mimms, 434 U.S. 106, 111 n.6 (1977).

Here, Officers Phifer and Lamumba observed the defendant's vehicle coming towards them, driving erratically and at a high rate of speed. The defendant was driving so fast that he lost control of the vehicle and crashed into the sidewalk, almost hitting various pedestrians. Speeding and failure to control one's vehicle is a violation of the D.C. Traffic Laws.[1] Accordingly, it was reasonable for the officers to conclude that the defendant has violated the D.C. traffic laws. Since the officers had probable cause to believe that the traffic laws were violated, they properly stopped the defendant to investigate. It was also reasonable for the officers to chase after the two men once they took off running instead of remaining on the scene of the traffic accident (crashing onto the sidewalk).

### C. There was Reasonable Articulable Suspicion to Stop Vehicle

Even if the Court concludes that the totality of the circumstances did not amount to probable cause, there was unquestionably reasonable articulable suspicion that the defendant had violated the traffic laws (and was perhaps under the influence of drugs and or alcohol) to justify approaching the vehicle and requesting the driver's license and registration. The Supreme Court has observed that "[t]he Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape" Adams v. Williams, 407 U.S. 143, 145 (1972). Rather, the Fourth Amendment permits an officer to make a brief investigatory stop of an individual if the officer has a reasonable

---

[1] Speeding, swerving and losing control of one's vehicle is often an indicator that the driver may be under the influence of illegal drugs and/or alcohol, which are definite public safety concerns.

6

suspicion that criminal activity may be afoot, even if the officer lacks probable cause to make an arrest. Terry v. Ohio, 392 U.S. 1, 30 (1968). It is well-settled that a police officer may make a brief investigatory stop of an individual if he acts upon a reasonable articulable suspicion that the suspect has or is engaged in criminal activity. Terry, 392 U.S. at 30-31. Reasonable articulable suspicion is something less than probable cause, but more than a mere "hunch" or generalized suspicion. United States v. Sokolow, 490 U.S. 1, 7 (1989) (requiring "some minimal level of objective justification" to support Terry stop) (citation omitted). The legality of a stop is evaluated under the totality of the circumstances, Sokolow, 490 U.S. at 8, and this Court will "look to the record as a whole to determine what facts were known to the officer and then consider whether a reasonable officer in those circumstances would have been suspicious." United States v. McKie, 951 F.2d 399, 402 (D.C. Cir. 1991) (citation omitted). The reasonableness of a stop under Terry is "judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" Terry, 392 U.S. at 21-22. In determining whether the officer's actions were reasonable, this Court looks at the situation through the eyes of "a reasonable, cautious police officer in light of the officer's experience and training." United States v. Lucas, 778 F.2d 885, 886 (D.C. Cir. 1985); see also United States v. Clark, 24 F.3d 299, 301-02 (D.C. Cir. 1994) (evidence must be "viewed through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training") (citation omitted).

    In Illinois v. Wardlow, 528 U.S. 119, 124-25 (2000), the Supreme Court held that officers had a reasonable suspicion to stop the respondent and investigate because the respondent was in a high crime area and took off in unprovoked flight upon noticing the police. Noting that courts "do

not have available empirical studies dealing with inferences drawn from suspicious behavior" the Court stated that "we cannot reasonably demand scientific certainty from judges or law enforcement officers where none exists." Id. at 124-25. Therefore, "the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior." Id. at 125. The Court concluded, based on this unprovoked flight, that the police officer "was justified in suspecting that Wardlow was involved in criminal activity, and, therefore, in investigating further." Id.

Here, both defendant ran away from police officers after defendant Thomas crashed onto the sidewalk, nearly hitting several pedestrians. When the defendants ran away from the scene of an accident, it was reasonable for officers to pursue them and to stop them in order to investigate the reasons for their flight. After the defendants were stopped, the police found the handgun in plain view from the vehicle from which they fled. At that point, the police had probable cause to arrest both defendants for possessing the handgun. Thus, there was no violation of defendants' Fourth Amendment rights.

      **D.**    **The handgun was in Plain View**

Police Officers do not violate the Fourth Amendment merely by looking inside the windows of the parked vehicles. See Texas v. Brown, 460 U.S. 730, 740 (1983) (no Fourth Amendment claim can arise when the police officer observed the contents of the glove compartment in a parked car by bending over and looking through the window with the aid of a flashlight); Speight v. United States, 671 A.2d 442, 453 (D.C.) ("the police invaded no privacy interest by approaching a vehicle parked on a public street and smelling the air emanating from the vehicle"), cert. denied, 117 S. Ct. 375 (1996). Although the Fourth Amendment is violated when property is seized in the absence of a warrant issued on the basis of probable cause, the plain view doctrine serves as one exception to this

requirement by "allowing warrantless seizure of evidence observed in plain sight when: (1) an officer does not 'violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed; (2) the evidence's 'incriminating character' is 'immediately apparent;' and (3) the officer has 'a lawful right of access to the object itself.'" Umanzor v. United States, 803 A.2d 983, 998-999 (D.C. 2002) (citing Horton v. California, 496 U.S. 128, n. 17 136-37 (1990)). "'The information obtained as a result of observation of an object in plain sight may be the basis for probable cause' justifying police 'access to a particular item.'" Umanzor, 803 A.2d at 999 (citing to Texas v. (Clifford) Brown, 460 U.S. 730, n.4 739 (1983)).

     As soon as the officers peered into the White Mercury Cougar which was partially on the public sidewalk and observed the .357 Smith & Wesson on the center console, at arms length between the driver's seat and the passenger seat, the officers had probable cause to arrest defedants Thomas and Jackson. The officers were lawfully on a public street processing an accident scene, now they were investigating a second traffic accident that occurred in their presence, and observed the gun in plain view inside the White Mercury Cougar. It was "immediately apparent" that the handgun was contraband, and the the sidewalk where the car was located was a public space to which the officer had access. See Umanzor, 803 A.2d at 998-99 (After a valid Terry stop, officer's sighting of knife handle and bloody shirt in plain view in defendant's vehicle provided probable cause for arrest). The officers "seizure of property in plain view involve[d] no invasion of privacy," since the gun was right on top of the center console, and thus the seizure was "presumptively reasonable." Texas v. (Clifford) Brown, 460 U.S. at 741-42 (citing Payton v. New York, 445 U.S. 573 (1980)) (emphasis in the original). This seizure was presumptively reasonable and defendant has made no arguments, nor can he, to rebut this presumption.

Wherefore, the government respectfully requests that defendant Jackson's motion to suppress physical evidence be denied.

Respectfully Submitted,

KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY

_____
Lionel Andre
Assistant United States Attorney
Narcotics Section
555 4th Street, N.W.
Washington, D.C. 20001
(202) 353-2481